In re Annette **BARNES**, Debtor.

Bankruptcy No. 95–52017.

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

Jan. 31, 1996.

Emmett L. Goodman, Jr., Macon, GA.

Kathleen S. Grantham, Warner Robins, GA.

Camille Hope, Chapter 13 Trustee, Macon, GA.

Wesley J. Boyer, Macon, GA.

John T. McGoldrick, Jr., Macon, GA.

### ORDER ON MOTION FOR RECONSIDERATION

JAMES D. WALKER, Jr., Bankruptcy Judge.

On October 23, 1995, a confirmation hearing was held in this case. At the hearing the Court considered the objection to confirmation filed by Federal Credit Company ("Federal"). At the conclusion of the hearing the Court announced a decision which provided certain confirmation options to the Debtor to satisfy the claim of Federal. Following the

announcement of that decision, Debtor filed her Motion For Reconsideration on November 9, 1995. A hearing on the motion was held on December 8, 1995. This order is entered after that hearing and takes into consideration arguments of counsel for Debtor and movant and the arguments of the Chapter 13 trustee. This case, and others like it, pose an equitable dilemma for the Court.

Debtor entered into an installment sale contract with Federal on March 27, 1995, for the purchase of a 1989 Pontiac Grand Am. That agreement provided for the cash purchase price of $6,080.45 to be paid with 28% interest to be repaid at the rate of $273.31 per month. Debtor filed this case on July 10, 1995 after making only two payments to Federal.

■ Debtor's plan proposes to pay Federal's claim as a secured claim in the amount of $4,000.00 at the rate of $138.00 per month at twelve percent interest. The balance of Federal's claim would be classified as unsecured and would receive no payment under the terms of the plan. In its Objection To Confirmation And To Dismiss Debtor's Chapter 13 Plan, Federal contends that Debtor failed to properly value the collateral. Federal contends further that it does not have adequate protection under Debtor's plan because the collateral is depreciating faster than the claim is reduced by payments under Debtor's plan.

The Court was persuaded by evidence presented at the confirmation hearing that Debtor did not incur this debt with a view towards filing Chapter 13. Instead, Debtor experienced financial difficulties which had not been foreseeable at the time of the purchase of the vehicle.

The dilemma is created by the fact that Debtor has proposed a plan which, on its face, may comply with all of the provisions of the Bankruptcy Code. She has dedicated all of her disposable income to fund the plan. The valuation she has set for the vehicle is on the low side of a range that would be reasonable based on evidence presented as to the value of comparable vehicles. The repayment terms and interest rate are comparable

to numerous other plans which are routinely approved by this Court.

On the other hand, the filing of this case has created for Federal irreparable harm which occurred nearly immediately after the Debtor took possession of the vehicle. If the Debtor were to propose to pay Federal's claim in full at the interest rate established by the installment sale contract, Federal could claim no harm. Instead, the Debtor proposes to neither pay the claim in full nor pay in accordance with the interest rate term specified in the contract.

Despite the fact that the need to file this case was caused by other circumstances, if the Debtor's plan is confirmed, it will create a virtual windfall for the Debtor in allowing her to reduce her obligations under the contract with Federal within a short time after taking possession of the vehicle while at the same time retaining all of the benefits of that contract in the form of the vehicle for herself. Such a benefit and its corresponding detriment occurring so soon after the transaction was undertaken is simply unfair and unsuitable to the equitable environment in which cases in this court must exist.

The Debtor's request for reconsideration and the presentations made pursuant to that request are very persuasive, as were the presentations made by Federal at both hearings. While it is not difficult to see the inequities presented by this case, it becomes increasingly difficult to apply any consistent rationale from case to case, particularly where the recency of the purchase is a lesser factor. While equity does not lend itself to the creation of a bright line rule, the lack of any guidance from the court creates potential inequity as creditors encounter what they may perceive to be a subjective standard applied unevenly on a case by case basis. There is no perfect equitable remedy for this problem.

■ In this case, it is unfair to allow Debtor to value the vehicle which is the subject of an installment sale contract within one hundred five days following delivery of that vehi-

cle.[1] If Debtor proposes to retain the vehicle, she should propose to pay the Federal claim in full. The claim should be determined, as any secured claim, by crediting unearned interest and other charges and calculating the pay off amount of the debt.

 Debtor may have to propose to reduce the amount of the monthly payment in the original contract in order to fund repayment of other creditors' claims. This might be done in two ways. First of all, Debtor could propose to extend the repayment term. Any such extension would not be expected to exceed the original term, or thirty-six months, whichever is greater.

Debtor may also propose to fund the payment of the claim at the rate of twelve percent which is routinely established for the payment of secured claims in Chapter 13 cases in this Court. This interest rate is less than the amount specified in the original installment sale contract. While the creditor might reasonably complain about the loss of the benefit of the bargain by the reduction in the interest rate, there is a corresponding benefit to the creditor by avoiding the effect of valuation.

These equitable considerations cannot be calculated with mathematical certainty. It should be sufficient to note that a higher valuation at a lower percentage yield is similar to a lower valuation with a higher yield. This result is a compromise among competing possibilities and as such, will in some respects, be as deficient as it might be sufficient. A perfect solution is not available.

 If Debtor is unable or unwilling to propose a plan in accordance with these terms, Federal will be permitted to require

Debtor to return the vehicle in full satisfaction of the claim.[2] Such an option would be consistent with the creditor's position that the vehicle was worth the amount of the purchase price at the time of the confirmation hearing. The reduction in value of the vehicle between the time of the sale and the time of the return by Debtor is clearly an uncompensated loss to the creditor. Most of this loss will have already been incurred before the bankruptcy case is filed. For that reason, there is no way for that loss to be compensated in this case, or any case, except at the expense of other creditors. This will not be permitted.

 This analysis presumes that Federal has refused to agree to a plan which varies from the terms set out above. It is inherent in this analysis that a debtor may propose and a creditor may agree to any terms which do not discriminate unfairly against other creditors. The options detailed here apply where the creditor prefers surrender of the vehicle in full satisfaction of the claim over valuation by Debtor's plan. Any delay on the part of a debtor in responding to a creditor's demand for the return of the vehicle or modification of the plan will be compensable as an administrative expense in such a case.

 Accordingly, the options in this case are as follows:

(1) The creditor may demand and receive an immediate return of the vehicle in full satisfaction of the claim; or

(2) Debtor may propose payment of this claim in full at twelve percent interest over a term not to exceed thirty-six months.

1. A consideration in this case which may not be present in other cases is the delay incurred in considering the creditor's objection. The motion for rehearing and the time this case has spent under advisement are factors which incline the court to grant relief to this creditor on terms that might be more favorable than other creditors could expect in similar cases. The interval between the date of the contract and the date of filing will always be an important consideration in every case.

2. In this case, Federal will not be required to return any portion of the $1,000 down payment

if Debtor opts to surrender the vehicle. There are two reasons for this conclusion. First, it appears that a substantial portion of the down payment has been disbursed by Federal to pay expenses directly incurred in the sale to Debtor. Second, there has been an unusually long delay in the resolution of this case resulting in further reduction in the value of the vehicle. In another case, with similar facts, some or all of the down payment may have to be returned by the creditor who insists on a return of a vehicle in preference to valuation by a debtor.

Lastly, any plan, including one which satisfies the requirements of this order, must be considered against the other confirmation criteria 1325(a) of the Code. If it can be shown that the recent purchase of the car by a debtor creates an unfair allocation of the debtor's resources in favor of the purchase of a new car and away from the repayment of pre-existing unsecured creditors, such a plan may not be proposed in good faith. All creditors, including those secured by recently purchased vehicles, have a right to require a plan which is fair. On the other hand, basic reliable transportation is likely to be absolutely essential to the debtor's reorganization in that transportation back and forth to work is a necessary prerequisite to the funding of any repayment plan. Compliance with the terms of this order as to the treatment of a secured creditor in the case of a recently purchased automobile will be one factor among many which will be considered by the court at confirmation to determine whether the plan has been proposed in good faith.

Debtor shall be permitted a period of ten (10) days following the entry of this order to modify the Chapter 13 Plan in accordance with the provisions of this order. In the absence of such a modification, an order will thereafter be entered dismissing this case.

SO ORDERED.